USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/20/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALVIN RODRIGUEZ,

                              Plaintiff,

        -against-

SGT. L. PASCAL, C.O. C. ORSO, and C.O.
B. MALLON,

                              Defendants.

24-CV-06085 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Alvin Rodriguez ("Plaintiff" or "Rodriguez") commenced this *pro se* action pursuant to 42 U.S.C. § 1983 ("§ 1983" or "Section 1983"). (Compl. at 3, ECF No. 1.) Plaintiff asserts claims against Sergeant L. Pascal ("Pascal"), Corrections Officer ("C.O.") Orso ("Orso"), and C.O. B. Mallon ("Mallon") (collectively, "Defendants"), alleging violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. (*Id*.) Defendants have moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) and have filed a memorandum of law in support of their motion. (*See* Defs. Mem., ECF No. 33.) For the following reasons, Defendants' motion to dismiss is GRANTED.

## FACTUAL BACKGROUND

The following facts are derived from Plaintiff's Complaint and are assumed to be true for the purpose of resolving this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiff practices Santeria, an Afro-Caribbean religion rooted in West African traditions. (Compl. at 4; *see also* Pl. Opp. at 3, ECF No. 35.) Plaintiff wears religious beads, known as "elekes," to symbolize his devotion to his faith. (Compl. at 4; *see also* Pl. Opp. at 3.) Plaintiff

1

alleges that removing these beads would violate his religious obligations. (Compl. at 4; Pl. Opp. at 3.)

On or about March 4, 2024, Plaintiff arrived at Orange County Correctional Facility for a scheduled visit with an inmate. (Compl. at 3–4.) Upon Plaintiff's arrival, Defendants Orso and Mallon informed him he would not be permitted to visit unless he removed his beads.[1] (Pl. Opp. at 18.) Defendant Pascal, a supervisor, affirmed Orso and Mallon's decision. (Id.) Defendants believed Plaintiff's beads were gang related. (Id. at 3.)

Plaintiff attempted to explain that he wore the beads for religious purposes. (Compl. at 4.) Pascal responded that he "'did not like [Plaintiffs] beads'" and refused to permit Plaintiff to proceed unless he removed them. (Id.) Plaintiff declined to remove his beads. (Id.) Pascal, after conferring with supervisory officials, informed Plaintiff that he would be permitted to see his visitor in the non-contact area of the facility without having to remove his beads. (Id.) Plaintiff proceeded with a non-contact visit. (See Pl. Opp. at 17.)

## PROCEDURAL HISTORY

Plaintiff initiated the instant action by filing his initial complaint on August 5th, 2024. (See Compl.) Defendants thereafter moved to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(6), and filed a memorandum of law in support of their motion. (See Defs. Mem.) Plaintiff filed an opposition memorandum and Defendants subsequently filed a reply brief. (See Pl. Opp; Defs. Reply, ECF No. 36.)

---

[1] In his complaint, Plaintiff indicates that Defendant Pascal was the first person to deny him access to his visit. (Compl. at 4.) Plaintiff clarifies in his opposition that Defendants Orso and Mallon were the first to deny him access to the visit, and that Pascal was summoned sometime thereafter. (Pl. Opp. at 18.)

2

**LEGAL STANDARD**

**A.  Fed. R. Civ. P. 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where, as here, a party is proceeding *pro se*, the Court is empowered to consider "new facts raised in opposition papers to the extent they are consistent with the complaint, treating the new factual allegations as amending the original complaint." *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018). A Court may consider new claims appearing for the first time in the briefing

3

if the claims "could have been asserted based on the facts alleged in the complaint." *Vlad-Berindan v. MTA New York City Transit*, no. 14-cv-675, 2014 WL 6982929, at *6 (S.D.N.Y.2014). Further, where plaintiff proceeds *pro se*, the court must "construe [ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Corbett v. Annucci*, no. 16-cv-4492, 2018 WL 919832, at *2 (S.D.N.Y Feb. 12, 2018) (alterations in original). However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law.'" *Id*. (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

### B.  Section 1983

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3; *see also Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, no. 09-cv-5446, 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Annis*

*v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.")

## DISCUSSION

Plaintiff alleges that Defendants' refusal to allow him to proceed with the contact visit violated his constitutional rights under the Eighth Amendment, Equal Protection Clause, and the Free Exercise Clause. (Compl. at 3.) Defendants move to dismiss on the basis that Plaintiff fails to plausibly allege any constitutional violation. (Defs. Mem. at 9.) As a threshold matter, this Court finds that Plaintiff does not possess a constitutional right to visitation at a correctional facility.

### I.   Eighth Amendment Claims[2][3]

Plaintiff alleges that Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment by placing him in a "disciplinary-like setting in the form of a no-contact visit." (Compl. at 3.) The Eighth Amendment applies only after the State "has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977); *U.S. v. Lovett*, 328 U.S. 303, 317–18 (1946). Here, Plaintiff was not an incarcerated individual, but rather a visitor to a correctional facility. Therefore, the Eighth Amendment is inapplicable, and Plaintiff's Eighth Amendment claims are dismissed with prejudice, as amendment would be futile.

---

[2] Plaintiff mistakenly pleads his Eighth Amendment claims under the Seventh Amendment. (Compl. at 3.) Plaintiff corrects this mistake in his opposition memorandum. (Pl. Opp. at 22.)

[3] Plaintiff seemingly waived his Eighth Amendment claims in his opposition memorandum. (*See* Pl. Opp. at 22) ("Although Defendants argue that the Eighth Amendment does not apply to me as a visitor, this does not defeat my claims. The factual allegations here clearly implicate the First and Fourteenth Amendments.").) Given Plaintiff's pro se status, the Court will analyze Plaintiff's Eighth Amendment claims regardless of any potential waiver.

II.    **Equal Protection Claims**

A.  **Race-Based Discrimination**

Plaintiff alleges Defendants discriminated against him based on his race in violation of the Equal Protection Clause of the Fourteenth Amendment by assuming his beads were gang related. (Compl. at 3.) The Equal Protection Clause provides that "[n]o State shall . . . deny to any person the equal protection of the laws." U.S. Const. amend. XIV, § 1. This provision is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).

To state a race-based discrimination claim under the Equal Protection Clause, a "plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000). There are three ways to establish intentional racial discrimination in violation of the Equal Protection Clause:

> First, a plaintiff could point to a law or policy that expressly classifies persons on the basis of race. Second, a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner. Third, a plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus.

*Browne v. Rivera*, 23 Civ. 8280, 2025 WL 950994, at *5 (S.D.N.Y. Mar. 28, 2025) (quoting *Floyd v. City of New York*, 959 F.Supp.2d 540, 570 (S.D.N.Y. 2013).

Plaintiff alleges only conclusory facts suggesting that Defendants discriminated against him on the basis of race. (*See* Compl. at 3; Pl. Opp. at 10, 22.) He does not identify any similarly situated individuals who were treated differently under comparable circumstances, nor does he allege facts supporting an inference of discriminatory intent based on race. He fails to allege that Defendants acted pursuant to a facially discriminatory policy, applied a neutral policy in a discriminatory manner, or acted with discriminatory animus.  Accordingly, Plaintiff has failed to

6

plausibly allege a violation of the Equal Protection Clause based on race, and these claims are dismissed without prejudice.

### B. Religious-Based Discrimination

Plaintiff further alleges that Defendants violated the Equal Protection Clause by discriminating against him on the basis of his religion. (Compl. at 3.) To state a religion-based discrimination claim under the Equal Protection Clause, a plaintiff "must plausibly allege that a government actor intentionally discriminated against them on the basis of their religion." *Goldstein v. Hochul*, 680 F.Supp.3d 370, 399 (S.D.N.Y. 2023). A plaintiff can demonstrate intentional discrimination in three ways: "'(1) a facially discriminatory law; (2) a facially neutral statute that was adopted with a discriminatory intent and applied with a discriminatory effect; and (3) a facially neutral law that is enforced in a discriminatory manner.'" *Omar Islamic Cntr. Inc. v. City of Meriden*, 633 F.Supp.3d 600, 624 (D. Conn. 2022) (quoting *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 945 F.3d 83, 110–11 (2d Cir. 2019)).

Plaintiff argues Defendants discriminated against him in their enforcement of the facility's visitor dress code. (Pl. Opp. at 14–15.) Plaintiff contends that despite exceptions in the dress code for religious apparel, Defendants "arbitrarily" refused to provide him a contact visit unless he removed his beads. (*Id*. at 15.) However, Plaintiff's own allegations indicate that Defendants denied him a contact visit based on perceived security concerns—namely, that his beads could be associated with gang affiliation—rather than religious animus.[4] (*Id*.) Nor does Plaintiff allege that similarly situated individuals were treated differently, such as visitors wearing comparable items who were permitted contact visits under similar circumstances.

---

[4] Plaintiff does not plead that Defendants' assumption about the beads gang affliction was a pretext for discrimination.

Accordingly, Plaintiff has failed to plausibly allege that Defendants intentionally discriminated against him in their enforcement of the facility's visitor dress code. Thus, Plaintiff's Equal Protection claims involving religious discrimination are dismissed without prejudice.

### III.    First Amendment Claims

Plaintiff alleges Defendants violated his First Amendment rights by "depriv[ing]" him of a contact visit because of his beads. (Compl. at 4). The Free Exercise Clause prohibits the government from infringing on individuals' right to "live out their faiths in daily life through 'the performance of (or abstention from) physical acts.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 524 (2022) (quoting *Emp. Div., Dept. of Hum. Res. v. Smith*, 494 U.S. 872, 877 (1990)). Absent an objective to "impugn [the plaintiff's] religious beliefs or restrict their religious practices . . . a Free Exercise claim will be sustained only if the 'government has placed a substantial burden on the observation of a central religious belief,' without 'a compelling governmental interest justif[ying] the burden.'" *Skoros v. City of New York*, 437 F.3d 1, 39 (2d Cir. 2006) (quoting *Jimmy Swaggart Ministries v. Bd. of Equalization*, 493 U.S. 378, 384–85 (1990)).[5] A substantial burden exists "where the state 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (quoting *Thomas v. Rev. Bd. of the Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981)).

Here, Defendants initially required Plaintiff to choose between visiting the inmate and removing his beads in violation of his religious beliefs. (Compl. at 4.) However, Defendants eventually permitted Plaintiff to visit the inmate in the "non-contact" area without removing his beads. (*Id.*) Thus, Plaintiff was not required to modify or violate his religious beliefs. At most,

---

[5] Plaintiff fails to plead facts, beyond mere conclusory statements, demonstrating that Defendants' objective in denying him a contact visit was to restrict his religious practices. (*See, e.g.*, Compl. at 3 (Plaintiff is claiming that his First Amendment right to freedom of religion was violated and utterly disregarded when plaintiff was singled out and religiously persecuted for his religious beads and race/ethnicity.")

Plaintiff alleges a limitation on the manner in which he could conduct the visit, rather than a prohibition on religious exercise. Such a limitation does not constitute the type of substantial pressure necessary to establish a substantial burden under the Free Exercise Clause. *See Simmons v. Adamy*, 987 F.Supp.2d 302, 308 (W.D.N.Y. 2013) (emphasizing that any burden on religious exercise "must be more than an inconvenience" and must represent "an interference with a tenet or belief that is central to religious doctrine.").

Moreover, even assuming arguendo that Plaintiff had plausibly alleged a burden on his religious exercise, Defendants' actions were justified by legitimate security concerns within a correctional facility. Courts afford substantial deference to correctional officials in matters of institutional security, including determinations regarding visitation conditions and the potential for gang affiliation. *See, e.g., Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("This Court accords substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining a corrections system's legitimate goals and determining the most appropriate means to accomplish them.") Here, Defendants' decision to restrict Plaintiff to a non-contact visit based on concerns that his beads could be associated with gang activity reflects a reasonable and neutral application of security policy, not an attempt to target or suppress religious practice.

Accordingly, Plaintiff has failed to plausibly allege that Defendants imposed a substantial burden on his religious exercise, and his Free Exercise claims are dismissed without prejudice.

## IV. Remaining Arguments

Defendants also move to dismiss on the grounds of lack of Monell liability, lack of personal involvement, and qualified immunity. (Defs. Mem. at 5–7, 9, 16–17.) Because Plaintiff has failed to plausibly allege that Defendants violated his constitutional rights, he fails to state a viable claim

under 42 U.S.C. § 1983, and his claims therefore fail as a matter of law. Accordingly, the Court need not reach Defendants' remaining arguments.

In any event, Plaintiff fails to plausibly allege the personal involvement of Defendants Orso and Mallon. Allegations that Defendants merely informed Plaintiff of facility policy or enforced visitation rules are insufficient to establish personal involvement under § 1983. When seeking monetary damages under § 1983, as Plaintiff does here, it is a "prerequisite" that he demonstrate the "personal involvement of defendants in [the] alleged constitutional deprivations." *Kirby v. Cruz*, 2025 WL 2886488, at *1 (2d Cir. Oct. 10, 2025) (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004)).

### LEAVE TO AMEND

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (internal quotation marks and citation omitted). "A *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal brackets and quotation marks omitted). However, "leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006).

As discussed above, the Eighth Amendment is inapplicable to Plaintiff. Thus, it would be futile to grant Plaintiff leave to amend his Eighth Amendment claims. In contrast, Plaintiff may plead additional facts to flesh out his Equal Protection Clause and Free Exercise Clause claims. Accordingly, Plaintiff is granted leave to amend and may replead his Equal Protection and Free Exercise claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff's Equal Protection and Free Exercise claims are dismissed without prejudice. Plaintiff's Eighth Amendment claims are dismissed with prejudice.

Plaintiff is granted leave to amend and may replead the claims that were dismissed without prejudice. If he decides to do so, Plaintiff will have until May 26, 2026 to file an Amended Complaint consistent with this Opinion and Order. Plaintiff is advised that the Amended Complaint will **replace**, **not supplement**, his Complaint, so any claims he wants to pursue must be included in or attached to the Amended Complaint. Defendants are directed to answer or otherwise respond by June 22, 2026. If Plaintiff fails to file an Amended Complaint within the time allowed, and he cannot show good cause to excuse such a failure, the claims dismissed without prejudice by this order will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 31. The Clerk of Court is further directed to mail a copy of this Opinion & Order to *pro se* Plaintiff and to show service on the docket.

SO ORDERED:

Dated: April 20, 2026
White Plains, New York

_____
NELSON S. ROMÁN
United States District Judge

11